IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-515-FL

DARIEL CHARLESWELL,                     )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )           **MEMORANDUM**
                                        )       **AND RECOMMENDATION**
NANCY A. BERRYHILL,[1]                   )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

In this action, plaintiff Dariel Charleswell ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 16, 18. Both filed memoranda in support of their respective motions. D.E. 17, 19. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 5 May 2016 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## I.  CASE HISTORY

Plaintiff filed an application for DIB on 4 January 2013, alleging a disability onset date of 28 May 2010.  Transcript of Proceedings ("Tr.") 15.  The application was denied initially and upon reconsideration, and a request for a hearing was timely filed.  Tr. 15.  On 19 November 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, who was represented by counsel, and a vocational expert testified.  Tr. 34-86.  The ALJ issued a decision denying plaintiff's claim on 17 March 2015.  Tr. 15-33.  Plaintiff timely requested review by the Appeals Council.  Tr. 10-11.  On 26 August 2015, the Appeals Council denied the request for review.  Tr. 1-5.  At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. § 404.981.  On 30 September 2015, plaintiff commenced this proceeding for judicial review, pursuant to 42 U.S.C. § 405(g).  *See* Compl. (D.E. 1).

## II.  STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]

> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC],

---

[2] *Mascio* involved a claim for Supplemental Security Income ("SSI") benefits. The statutes and regulations applicable to DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416. The DIB counterpart to the cited SSI regulation is 20 C.F.R. § 404.1545(a)(1).

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

## III.   ALJ'S FINDINGS

Plaintiff was 44 years old on the alleged onset date of disability and 49 years old on the date of the hearing. Tr. 30 ¶ 7. Plaintiff has at least a high school education. Tr. 30 ¶ 8. The ALJ found that plaintiff has past relevant work as a shipping and receiving clerk, shipping and receiving supervisor, and logistics specialist. Tr. 30 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 17 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: lumbar and cervical degenerative disc disease; chronic obstructive pulmonary disease; post-traumatic stress disorder; an affective disorder; and a personality disorder. Tr. 18 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 18 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work as follows:

[T]he claimant has the [RFC] to perform work at the light exertional level except that he can stand and/or walk for up to a total of 4 hours in an 8-hour workday, and can sit for up to a total of 6 hours in an 8-hour workday. He can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolds; can occasionally balance; and can frequently stop, kneel, crouch, and crawl. Regarding the neck, he can perform flexion, extension, and rotation frequently.

---

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

He can frequent[ly] reach overhead bilaterally. He can have frequent exposure to respiratory irritants (e.g., fumes, noxious odors, dusts, mists, gases, and poor ventilation). He can have occasional exposure to moving mechanical parts and high, exposed places (as defined by the Selected Characteristics of Occupations). He can understand, remember, and perform work tasks at GED Reasoning Level 03 and can perform productive work tasks for up to an average of 98 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. He can perform goal-oriented rather than production-oriented work (e.g., the performance of work tasks in allotted time is more important tha[n] the pace at which the work tasks are performed). He can perform work limited to indoors. He can perform work that does not require access to news delivered by any means (e.g., TV, radio, etc.). He can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties). He can have frequent contact with coworkers that is inconsequential or superficial (i.e., no sustained conversations, e.g., mail clerk). He can have occasional contact with the general public that is inconsequential or superficial (i.e., no sustained conversations, e.g., ticket taker).

Tr. 20-21 ¶ 5.[5]

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 30 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of mail clerk, garment sorter, folding machine operator, laundry classifier, egg processor, cuff folder, and dowel inspector. Tr. 30-32 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 28 May 2010, through the date of the decision, 17 March 2015. Tr. 32 ¶ 11.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence

---

[5] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff seeks reversal of the ALJ's decision and the award of benefits or, in the alternative, remand for a new hearing on the grounds that the ALJ erred by failing to find that he met Listing 1.04; improperly assessing the medical opinions of his primary care physician, Jagdish Lal, M.D., and pain physician, Viren Desai, M.D.; failing to find his cane medically necessary; and erroneously evaluating a determination by the Veterans Administration that plaintiff is disabled. Because the court finds that the issue of the ALJ's assessment of the medical opinions of Dr. Lal and Dr. Desai is dispositive of this appeal, it addresses only that issue on the merits.

## ALJ'S EVAUATION OF DR. LAL'S AND DR. DESAI'S OPINIONS

### I.  APPLICABLE LEGAL STANDARDS

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), . . . an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see*

*Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record as a whole, any specialization of the provider, and any other factors that tend to support or contradict the opinions. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Snider v. Colvin*, No. 7:12cv539, 2014 WL 793151, at *8 (W.D. Va. 10 Feb. 2014) ("'None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion.'" (quoting *Ricks v. Comm'r*, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. 29 Dec. 2010)), *rep. & recomm. adopted*, 2014 WL 793151 at *1 (26 Feb. 2014). Nonetheless, while the ALJ is required to consider the enumerated factors, he is "not required to make a seriatim assessment as if it were a sequential evaluation." *Vaughn v. Astrue*, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. 13 Apr. 2012), *rep. & recomm. adopted*, 2012 WL 1569564, at *1 (3 May 2012). Similarly, it is not necessary for the ALJ to recite each factor as long as the ALJ's decision indicates consideration of all the pertinent factors. *Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the

testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issue\s reserved to the Commissioner.").

## II. DR. LAL'S OPINIONS

The record shows Dr. Lal had at least 16 office visits with plaintiff at Raconda Internal Medicine from 8 February 2008, predating the alleged period of disability onset of 28 May 2010, to 5 November 2014. *See* Tr. 1086-96, 1275-82, 1429-53. Notably, the ALJ does not discuss plaintiff's treatment with Dr. Lal specifically. Instead, he reviews plaintiff's treatment history with all his providers collectively, including citations to the treatment records, without discussing plaintiff's treating relationship with any particular provider or even naming any of them. Tr. 24-27 ¶ 5.

On 5 November 2014, well over six years after Dr. Lal's treatment of plaintiff first began, Dr. Lal issued a one-page medical source statement entitled "Questionnaire to Physician Regarding Physical Abilities and Limitations." Tr. 1454. The questionnaire includes 25 numbered questions about the levels of various activities and of tolerance to various environmental conditions of which plaintiff was capable to be answered by circling the desired

response (or responses). There is also a space at the bottom of the questionnaire for comments. The questions inquire about the amount of time plaintiff could work, stand, and sit; the amount of weight he could lift; the frequency with which he could perform specified postural and manipulative activities and drive or be exposed to specified environmental conditions (*i.e.*, "Never," "Occasionally," "Frequently," or "Constantly"); plaintiff's vision; plaintiff's need to elevate his legs during an eight-hour workday (*i.e.*, "None," "Occasionally," "Frequently," or "Most of Time"); and the level of plaintiff's pain (*i.e.*, "None," "Mild," "Moderate," "Severe," or "Extreme").

Dr. Lal opined, in part, that plaintiff could not work any hours per day; could stand 15 minutes at a time and sit 60 minutes at a time; could reach over shoulder level with both arms only occasionally; needed to elevate his legs during an eight-hour workday occasionally; and suffered severe pain. In the comment section of the form, Dr. Lal wrote, "Disabled due to many medical problems." Tr. 1454.

The ALJ gave "little weight" to Dr. Lal's opinions, providing three reasons:

> Assaying the medical source statements, Dr. Lal is given little weight for several reasons (Exhibit 29F). [1] The statement consists of circled limitations with no rationale or analysis in support. This is the functional equivalent of the doctor responding to closed ended questions. [2] The terms "frequently" and "occasionally" are not defined on the form. Because these terms are defined by Regulation, they are terms of art. There is nothing in the record that shows Dr. Lal is familiar with the Social Security disability process and the undersigned declines to assume that the terms were used in a manner consistent with the Regulations (SSR 96-2p).
>
> [3] Dr. Lal also opines the claimant is "disabled due to many medical problems." The doctor provides no analysis, rationale, or explanation as to how the conclusion was reached. There is nothing on the face of the statement that shows that the doctor's use of "disabled" is consistent with the legal definition set forth in the Social Security Act. Because the undersigned does not know what standard the doctor used in concluding that the claimant is "disabled," it serves no purpose to determine if the doctor's treatment notes support the stated conclusion. However, in the end, the final responsibility for deciding whether the claimant is

"disabled" under the Social Security Act is reserved to the Commissioner of Social Security, and treating source opinions on the issue are never entitled to controlling weight or special significance (20 CFR 404.1527(e); SSR 96-5p).

Tr. 27 ¶ 5. The reasons given by the ALJ do not adequately support his discounting the opinions of Dr. Lal.

As to the first reason, lack of a supporting explanation, it is certainly a valid basis for assigning less weight to a medical opinion. Application of this reason to the responses to questions nos. 2 to 25 is proper. As the ALJ states, Dr. Lal includes no rationale or analysis in support of his responses to these questions.

It is less clear that lack of a supporting explanation is also applicable to Dr. Lal's response to question no. 1—that plaintiff can work no hours per day—or his written opinion that plaintiff is "[d]isabled due to many medical problems." Tr. 1454. The reason is that the responses to questions nos. 2 to 24 would appear to comprise, at least in part, the basis of Dr. Lal's opinion that plaintiff can work no hours per day and is disabled. These responses indicate that plaintiff has significant limitations in a range of functional areas. The ALJ's decision does not clearly show that he considered whether these responses served to explain Dr. Lal's response to question no. 1 and opinion on disability.

The ALJ makes the further finding that Dr. Lal's circling responses without giving a rationale or analysis "is the functional equivalent of the doctor responding to closed ended questions." Tr. 27 ¶ 5. The gravamen of this finding is to minimize the amount of information conveyed in Dr. Lal's responses on the basis of the format of the questionnaire. However, each of the questions, other than question no. 23 (which is unintelligible), provides a choice of four to six responses. The listed responses to the questions about lifting (nos. 6 and 7) and postural, manipulative activities, and environmental conditions (nos. 8-17 and 19-22) correspond to levels

of such activity and condition recognized in Social Security law, as discussed further below. In addition, as pointed out, there is a space for comments at the bottom of the form, which Dr. Lal could have used to amplify on his responses to the questions. The court is concerned that the ALJ may have improperly discounted Dr. Lal's opinions to some degree simply on the basis of the format in which they were expressed.

Even if the ALJ is deemed to have properly relied on lack of supporting explanation in assessing Dr. Lal's opinions, that basis alone is not sufficient to salvage the ALJ's assessment. The other reasons the ALJ gives suffer serious flaws. They irretrievably taint the ALJ's assessment of Dr. Lal's opinions as a whole. Moreover, as discussed below, under the circumstances presented, the ALJ needed to discuss additional factors beyond those he addressed expressly.

The second reason given by the ALJ for discounting Dr. Lal's opinions—that he could not give the terms "Occasionally" and "Frequently" as used in the questionnaire the same meaning as in the Regulations—is deficient.[6] One problem is that ALJ's apparent requirement that the record affirmatively demonstrate that Dr. Lal was familiar with the Social Security disability process as a condition to giving these terms the same meaning as in the Regulations.

---

[6] In analyzing this finding, the court assumes that while the ALJ speaks in terms of the same meaning as in the Regulations, and the court will as well for the sake of continuity, he is referring to the meaning as used in the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (U.S. Dep't of Labor 1993) ("SCO"). The SCO is a supplement to the DOT that lists the specific functional requirements for specific DOT occupations. *See* Soc. Sec. Ruling 83–14, 1983 WL 31254, at *1 (1983). The Regulations view the DOT as an authoritative source of information. For example, as noted, the terms used in the DOT for the various exertional levels of jobs (*i.e.*, sedentary, light, medium, heavy, and very heavy) have the same meaning as in the DOT. 20 C.F.R. § 404.1567. The Regulations also expressly provide that the data in the DOT on the strength demands (*i.e.*, sitting, standing, walking, lifting, carrying, pushing, or pulling) of occupations be used in determining the physical exertion requirements of work in the national economy (*see* 20 C.F.R. §§ 404.1567, 404.1569a(a)) and recognize the DOT as a source of job information of which an ALJ may take judicial notice (*see* 20 C.F.R. § 404.1566(d)(1); *see also* 20 C.F.R. § 404.1569 (stating that the medical-vocational guidelines use data from the DOT)). As shown above, the ALJ himself cites to the SCO in his RFC determination. Tr. 21 ¶ 5. Thus, at least for purposes of the second reason given by the ALJ for discounting Dr. Lal's opinions, the court deems "the Regulations" as used by the ALJ to encompass the SCO.

The ALJ cites no authority for this proposition.[7] The court finds that it is tantamount to speculation by the ALJ that Dr. Lal has limited familiarity with the Social Security disability process. *See Bonner v. Colvin*, No. 5:15-cv-03332, 2016 WL 4408831, at \*12 (S.D.W. Va. 27 July 2016) (finding that in discounting the opinions of a treating physician the ALJ erred by speculating that he was unfamiliar with the Social Security disability process because he submitted his opinions to a private insurance carrier), *rep. & recomm. adopted*, 2016 WL 4411505, at \*1 (16 Aug. 2016).

The questionnaire appears to contemplate that "Occasionally" and "Frequently" have the same meaning as in the Regulations. The various levels of activity under the Regulations with respect to postural and manipulative demands, and levels of environmental conditions are "Not Present," "Occasionally," "Frequently," and "Constantly." *See* SCO app. C at p. C-3; app. D at p. D-1. These terms correspond virtually identically to the terms for the various levels listed in the questionnaire: "Never," "Occasionally," "Frequently," and "Constantly." Tr. 1454.

Whether or not it was proper, the ALJ's determination that "Occasionally" and "Frequently" did not have the same meaning as in the Regulations did not permit him to give them no meaning and simply disregard the related opinions, as his finding implies he did. It is not as if "Occasionally" and "Frequently" are arcane terms susceptible to only some specialized meaning. They—and the other terms indicating level of activity or condition—are all commonly used terms with everyday meanings. The comparative context in which they are used, indicating increasing levels of activity or condition, obviously facilitates determination of their meaning.

---

[7] To the extent that the ALJ was effectively discounting Dr. Lal's opinions on the basis of unfamiliarity with the Social Security disability process, he also acted improperly. *Horton v. Comm'r*, No. 4:15-cv-8, 2016 WL 1381839, at \*10 (W.D. Va. 6 Apr. 2016) (finding that reasoning rang hollow where "the ALJ provided no support for his conclusion that these medical professionals were unfamiliar with the SSA disability program, and offered no explanation for why [the treating physicians'] supposed lack of familiarity with disability standards made their opinions any less reliable than those of the DDS experts").

13

The third reason the ALJ gives for discounting Dr. Lal's opinions focuses, as noted, on Dr. Lal's opinion that plaintiff is "disabled due to many medical problems." Tr. 27 ¶ 5 (referencing Tr. 1454). It is true, as the ALJ states, that this opinion is not entitled to special weight because of its source.

The other findings the ALJ made regarding Dr. Lal's opinion on disability are not so well founded. The finding that the opinion is not supported by any analysis, rationale, or explanation is dubious because, as discussed, the other opinions set out in the questionnaire arguably provide, at least in part, the basis for the opinion.

More seriously, the ALJ states that "[t]here is nothing on the face of the statement that shows that the doctor's use of 'disabled' is consistent with the legal definition set forth in the Social Security Act." Tr. 27 ¶ 5. Much as with "Occasionally" and "Frequently," it is questionable whether Dr. Lal's medical source statement needed to affirmatively demonstrate that "disabled" has a meaning consistent with the Social Security definition for the ALJ to give it such meaning.

In any event, the ALJ's stated inability to determine the consistency of "disabled" as used by Dr. Lal with the definition under Social Security law did not permit him to give "disabled" no meaning and effectively disregard the opinion being expressed, as he apparently did. As with "Occasionally" and "Frequently," "disabled" has an everyday meaning that is obviously pertinent in the context here, namely, unable to work. The ALJ should have considered attributing "disabled" this meaning, as general as it may be. There is no indication that he did.

Nor did the ALJ's inability to determine such consistency justify his not determining whether Dr. Lal's treatment notes supported his opinion on disability. The ALJ states expressly that he failed to perform this analysis.

The ALJ's reliance on the ground of lack of demonstrable consistency is particularly unjustified because it is merely *consistency* with the Social Security definition that is the ALJ's concern. As improper as the ALJ's definitional finding was with respect to the terms "Occasionally" and "Frequently," at least there his concern was *identity* of Dr. Lal's definition with the Social Security definition. It is difficult to conceive of any meaning reasonably attributable to "disabled" as used in the medical source statement that would not be consistent, to some degree, with the Social Security definition.

In his discussion of Dr. Lal's opinions, the ALJ does not mention many factors he was required to consider. Generally, of course, an ALJ is not required to discuss all evidence he is required to consider. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based . . . there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." (quotation marks omitted)). Nonetheless, the ALJ's handling of the factors he did discuss undermines the court's confidence that he did consider all the other factors he was required to consider. The ALJ's conclusory statement that he "also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p" (Tr. 21 ¶ 5) is no substitute under the circumstances for a clearer indication that he, in fact, did consider all that he was required to consider. Of particular concern is the ALJ's failure—in either his assessment of Dr. Lal's

opinions or even his summary review of the treatment records—to reference in any way the length, frequency, and nature[8] of Dr. Lal's treatment relationship with plaintiff, especially since Dr. Lal treated plaintiff over a span of 8 years and saw him at least 16 times with 15 of those visits occurring during the relevant time period. *See Holcomb v. Colvin*, No. 8:13-cv-2066-JMC, 2015 WL 1423349, at *3 n.6 (D.S.C. 27 Mar. 2015) (remanding case where court could not determine if ALJ considered all of the factors in 20 C.F.R. § 404.1527(c) and noted that "[o]ther than a mention of the date range during which Plaintiff saw [the treating physician] and reference to exhibits, the ALJ makes no mention of the frequency of examination or the nature and extent of the relationship, nor why those factors did not require the ALJ to afford [the treating physician's] opinions more weight"); *Baxter v. Astrue*, No. SKG-10-3048, 2012 WL 32567, at *8 (D. Md. 4 Jan. 2012) (remanding case where "[t]he Court has no way of knowing whether the ALJ appreciated the frequency and regularity of treatment before rejecting [the treating physician's] opinion").

The opinions of treating physicians can, of course, be given significant evidentiary weight and thereby play a central role in determination of a disability claim. There is significant medical and other evidence in this case substantiating limitations plaintiff alleges, as the plethora of limitations included in the ALJ's RFC determination shows. *See* Tr. 20-21 ¶ 5. Proper assessment of the opinions of Dr. Lal's opinions could materially affect the outcome of this case,

---

[8] 20 C.F.R. § 404.1527(c)(2) explains the importance of the length of the relationship between the plaintiff and the treating source and the frequency of visits: "(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the treating source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source. (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." 20 C.F.R. § 404.1527(c)(2)(i), (ii).

especially in light of the length of his relationship with plaintiff. Therefore, aside from the considerations noted below, the ALJ's errors are not harmless and require remand. *See, e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Pulliam v. Colvin*, No. 1:13-cv-176, 2016 WL 843307, at *4 (M.D.N.C. 1 Mar. 2016) (holding that error in ALJ's failure to expressly weigh treating physician's medical opinion was not harmless and warranted remand).

Further, given the deficiencies in the ALJ's evaluation of Dr. Lal's opinions, the ALJ has failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" he reached regarding Dr. Lal's opinions, as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The court is thereby precluded from conducting a meaningful substantial-evidence review of the ALJ's decision, a ground independently requiring remand. *Id.* at 190-91 (holding that the ALJ's explanation that he gave "limited weight" to medical opinions because "the objective evidence or the claimant's treatment history did not support" them and similarly cursory explanations of other opinions precluded meaningful substantial-evidence review (internal quotation marks omitted)) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (holding that explanation by ALJ that he gave "less weight" to medical opinions because they were "not well-supported by the medical record" was so "cursory and conclusory" as to preclude meaningful review and remanding case (internal quotation marks omitted)); *see also Boyd v. Colvin*, No. 9:13-CV-03189-DCN, 2015 WL 875422, at *3 (D.S.C. 2 Mar. 2015) (remanding case and noting that "because of the importance of treating physicians' opinions and the unequivocal law stating that the ALJ must weigh such opinions and provide good reasons for the weight given, the court is extremely hesitant to accept what is, at most, an implicit rejection

of [the treating physician's] opinion"); *Mason v. Colvin*, No. 4:13-CV-93-D, 2014 WL 4162788, at *8 (E.D.N.C. 29 July 2014) ("[T]he court cannot overlook the 'importance of analyzing a treating physician's opinion.'" (quoting Ord. (D.E. 31), *Moreno v. Colvin*, No. 4:12–CV–143–D (6 Sept. 2013)), *rep. & recomm. adopted*, 2014 WL 4162818, at *1 (20 Aug. 2014)).

## III.  DR. DESAI'S OPINIONS

Plaintiff had at least 16 office visits at the Fayetteville Pain Center between 11 January 2013 and 27 October 2014. Seven of the visits were with Dr. Desai and the rest were with a nurse practitioner, but indicate Dr. Desai as the supervisor. *See* Tr. 470-510, 1082-85, 1287-1316, 1342-54. As with Dr. Lal and all the other treating sources, the ALJ did not discuss plaintiff's treating history with Dr. Desai specifically.

In October of 2014, Dr. Desai completed a two-page[9] medical source statement entitled "Questionnaire to Physician Regarding Cervical Spine Disorders." Tr. 1340-41. The questionnaire first sets out a listing of eight medical conditions with the instruction to "[c]heck all that are present on examination or testing." Tr. 1340. There follow ten questions to be answered by circling the desired response (or responses). Tr. 1340. The questions inquire about the level of pain with which plaintiff suffers (*i.e.*, "None," "Mild," "Moderate," "Severe," or "Extreme"); the amount of time plaintiff could work per day, and stand and sit at a time; the amount of weight plaintiff could lift; and the extent to which plaintiff could rotate his neck to the right and left, elevate his chin, and bring his chin to his neck (*i.e.*, "Can do," "To a limited extent," "Occasionally," or "Cannot do"). Tr. 1340. A space for comments is set out at the bottom of the questionnaire.

As to plaintiff's medical conditions, Dr. Desai noted that he has neuro-anatomic distribution of pain and limitation of motion of the spine. Tr. 1340. He opined that plaintiff

---

[9] The second page is simply the signature page.

suffered with pain that was severe; could work only one to two hours per day; could stand for 15 minutes at one time and sit for 30 minutes at one time; could lift only 5 pounds occasionally and no weight frequently; and could rotate his neck to the left and right, elevate his chin, and bring his chin to his neck only "[t]o a limited extent." Tr. 1340. Dr. Desai did not write in anything in the section for comments.

The ALJ gave Dr. Desai "little weight," explaining as follows:

> Dr. Desai is also given little weight (Exhibit 23F). Again, no analysis is provided to support the conclusions. Further, the terms "severe," and "to a limited extent" are not defined and provide little meaningful insight into the claimant's functional limitations.

Tr. 27 ¶ 5.

This assessment by the ALJ fails for reasons comparable to those discussed with respect to his assessment of Dr. Lal's opinions. The assessment is unduly cursory and conclusory in light of the significant treating relationship Dr. Desai had with plaintiff and the potential significance of his opinions. Indeed, the ALJ addresses only one factor expressly recognized in the Regulations—provision of a supporting explanation. There is, for example, no explicit discussion of Dr. Desai's relationship with plaintiff or the underlying medical records and their consistency with his opinions.

The validity of the ALJ's objection regarding the lack of a definition of "Severe," which Dr. Desai indicated was the level of plaintiff's pain, is dubious. Pain is by nature subjective. No precise definition of the level of pain is possible. Moreover, the questionnaire itself provides a strong indication of what the term signifies by setting out with it the other possible levels of pain from which Dr. Desai could select. Again, the scale used in the questionnaire is "None," "Mild," "Moderate," "Severe," and "Extreme." Tr. 1340. Interestingly, as previously referenced, Dr. Lal found in the questionnaire that he completed that plaintiff had "Severe" pain, selecting that

option from the same scale appearing in the questionnaire that Dr. Desai completed. The ALJ did not find this opinion by Dr. Lal to be ambiguous as he did with the same finding by Dr. Desai. The ALJ does not address this patent inconsistency.

As with his assessment of Dr. Lal's opinions, the court concludes with respect to the ALJ's assessment of Dr. Desai's opinions that his errors are not harmless and that the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Desai's opinions were entitled to little weight, thereby precluding meaningful substantial-evidence review of the ALJ's decision. *See Monroe*, 826 F.3d at 189, 190-91; *Garner*, 436 F. App'x at 226 n.* The ALJ's deficient assessment of Dr. Desai's opinions therefore provides a basis for remand independent of the deficiencies in the ALJ's assessment of Dr. Lal's opinions.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 16) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 18) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 15 February 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject,

or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

This 1st day of February 2017.

James E. Gates
United States Magistrate Judge